FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2014 JUL 10  AM 9: 33

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
            DEPUTY

AP SEATING USA, LLC,
                    **Plaintiff,**

-vs-                                                  Case No.  A-14-CA-058-SS

CIRCUIT OF THE AMERICAS LLC,
                    **Defendant.**

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Circuit of the Americas LLC (COTA)'s Motion to Confirm Arbitration Award [#15], Plaintiff AP Seating USA, LLC's Response [#20], and COTA's Reply [#21]; and AP Seating's Motion to Vacate an Improper Arbitration Award and Confirm a Unanimous and Unambiguous Award [#16], COTA's Response [#19], and AP Seating's Reply [#22]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING COTA's motion, DENYING AP Seating's motion, and confirming the October 21, 2013 arbitration award as clarified by the arbitration panel's November 21, 2013 modification.

## Background

In 2010, COTA announced it would build a Formula One Grand Prix facility near Austin, Texas. COTA contracted with AP Seating to provide a portion of the facility's seats. The contract called for COTA to pay AP Seating an annual rental fee in exchange for AP Seating providing and installing the seats. Roughly one month before the inaugural race in November 2012, AP Seating's

funding dried up, leaving AP Seating unable to complete the work. The parties reached an agreement by letter in which COTA agreed to pay approximately two million dollars to AP Seating's suppliers and labor force in exchange for AP Seating signing over the remaining seats. The installation was completed on time and the inaugural race occurred as planned.

AP Seating subsequently invoiced COTA for unpaid rent on the seats. This demand brought the parties' ownership dispute to light, with each asserting ownership of a different portion of the seats. The parties ultimately proceeded to arbitration as their contract required. On October 21, 2013, a three-member arbitration panel issued a unanimous award (the "Original Award") in favor of COTA. The Original Award expressly incorporated a particular damage model submitted by COTA, awarded COTA $432,614 in damages and an additional $460,000 in attorney's fees and expenses, and taxed all arbitration costs ($136,000) against AP Seating. *See* Mot. Vacate [#16-4], Ex. F, at 5. After adopting COTA's damage model, the Original Award concluded "COTA has acquired an undivided interest of 47% in the Premium Seats . . . [and] AP Seating continues to own . . . a 53% undivided interest in the Premium Seats." *Id.*

The parties were unable to agree on how to interpret the Original Award. COTA claimed ownership of the seats in full, while AP Seating claimed ownership in 53% of the seats pending an additional payment from COTA. The parties agreed to request a clarification from the arbitration panel, and both submitted requests asking the panel to clarify the parties' respective ownership interests in the seats. The arbitration panel responded to the requests on November 21, 2013, by issuing a clarification or modification of the award (the "Modified Award") signed by two of the three arbitrators. The Modified Award stated "COTA has . . . validly acquired a 47% interest in the equipment and validly exercised its option to purchase the remaining 53% . . . as determined in the

[Original] Award through the adoption of Damage Model 3 (Exhibit C41)." *Id.* [#16-8], Ex. J. The Modified Award stated the language awarding a 53% interest in the seats to AP Seating was included "as a result of a clerical and administrative error," for which the arbitrators apologized, and was struck from the Original Award. *Id.* The third arbitrator dissented, denying the alleged error was clerical and calling the Modified Award an impermissible "re-adjudication of the merits of the dispute." *Id.* [#16-9], Ex. K.

The parties are now before this Court. COTA seeks confirmation and enforcement of the Original Award as clarified by the Modified Award. AP Seating seeks vacatur of the Modified Award and confirmation of the Original Award.

## Analysis

"In light of the strong federal policy favoring arbitration, judicial review of an arbitraiton award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (internal quotation marks omitted). "Section 10 of the Federal Arbitration Act . . . provides the only grounds upon which a reviewing court may vacate an arbitrative award." *Id.* at 472 (internal quotation marks omitted). As relevant here, § 10(a) allows vacatur "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Rain CII*, 674 F.3d at 472 (internal quotation marks omitted).

The parties agree the arbitrators in this case were bound by the Commercial Arbitration Rules promulgated by the American Arbitration Association. Rule 46[1] provides:

---

[1] The relevant Rule 46 has since been recodified as Rule 50.

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

This case presents the seemingly straightforward question whether the arbitration panel's November 21, 2013 Modified Award permissibly corrected a clerical error or impermissibly "redetermine[d] the merits" of the parties' dispute.

The parties' briefs focus on the Fifth Circuit's opinion in *Rain CII*. COTA contends the opinion is controlling. AP Seating maintains *Rain CII* is distinguishable. In *Rain CII*, Rain and Conoco arbitrated a dispute over which pricing formula to use under their contract. 674 F.3d at 471. The contract tasked the arbitrator with choosing one party's submission over the other. *Id.* After the arbitrator issued an award, Rain requested a clarification under AAA Rule 46 because it viewed two paragraphs copied from Conoco's draft award as inconsistent with the rest of the award. *Id.* The arbitrator "granted Rain's motion, identified the 'inadvertently included sentences' as clerical errors, and removed them from the final award." *Id.*

Conoco then asked the district court to vacate the award, while Rain asked for confirmation of the award. *Id.* The district court denied the motion to vacate and granted the motion to confirm the award, and the Fifth Circuit affirmed. *Id.* On appeal, Conoco reurged its argument the arbitrator's "inclusion of the paragraphs [from Conoco's draft award] was not a clerical error." *Id.* at 473. The Fifth Circuit flatly rejected this argument: "Conoco has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible. Given the considerable deference afforded arbitration awards, Conoco's argument that the arbitrator exceeded his powers . . . must fail." *Id.*

*Rain CII* is distinguishable from this case in important ways. Unlike the arbitrator in *Rain CII*, the panel in this case did not borrow the language in its Original Award from one of the parties' drafts (though the panel did expressly incorporate COTA's damage model). This case also involved an arbitration panel, rather than a single arbitrator. That distinction gives real meat to the parties' dispute because the third arbitrator here dissented from the Modified Award, although he had agreed to the Original Award. *Rain CII* undeniably addressed a similar but ultimately distinct factual scenario.

Despite these differences, *Rain CII* remains informative. Just like Conoco there, AP Seating here "has cited to no case holding that an arbitrator's correction of an award for clerical errors was not genuine or credible." *Id.* Indeed, AP Seating maintains this case is one of first impression. *See* Pl.'s Reply [#22], at 3 ("The Federal Judiciary has never been called upon to determine whether or not a modification to a previously unanimous arbitration award is permissible under AAA Rule 46—especially when one arbiter from the panel states that a modification would be improper as it would substantively alter the Original Award."). Neither party has identified any authority outlining what factors a court should consider in evaluating whether an arbitration panel's clerical error correction was genuine or credible.

AP Seating insists "the best evidence possible to show that a correction of an award for clerical errors was not genuine or credible" is the third arbitrator's dissent. *Id.* at 5. But following this logic, the best evidence to the contrary is the arbitration panel's "majority opinion," in which two of the three arbitrators deem the modification to be a correction of a clerical error. As in Longhorn baseball and the World Cup, two beats one every day of the week. *See* AAA Commercial Arbitration Rule 44(a) ("When the panel consists of more than one arbitrator . . . a majority of the

arbitrators must make all decisions."). Even if this Court had doubts as to what the arbitration panel intended, any such doubts must be resolved in favor of the arbitration. *21st Fin. Servs.*, 747 F.3d at 336; *see also Rain CII*, 674 F.3d at 472 ("An award may not be set aside for a mere mistake of fact or law" (internal quotation marks omitted)). Given the extraordinary level of deference afforded to arbitration awards, a majority opinion declaring certain language in an award to be a clerical error must be upheld over the voice of a lone dissenter, at least absent additional, compelling evidence suggesting the majority opinion was somehow improper.

## Conclusion

The parties in this case disagreed over the meaning of their arbitration award. AP Seating, believing the award to unambiguously vest it with a 53% interest in the seats, had two options: (1) ask this Court to enforce the award as written, or (2) ask the arbitration panel to clarify its award. Each choice posed certain risks. The Court may have enforced the award, or may have found the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made" and returned the parties to arbitration. 9 U.S.C. § 10(a)(4). The arbitration panel may have "clarified" the award in either party's favor, in which case AP Seating may have ended up defending the panel's clarification before this Court rather than attacking it. AP Seating chose to roll the dice with the arbitrators rather than the Court. As a result, it must now live with the clarification it requested and received.[2] *See Brown v. Witco Corp.*, 340 F.3d 209,

---

[2] This case stands as a powerful testament to the benefits of arbitration over the traditional trial-by-jury process. The parties spent just under one year completing the arbitration process (demand to final award). Based on the attorney's fees and costs awarded, it appears the parties likely expended something near one million dollars between them. The arbitrators entered a unanimous award so ambiguous the parties could not agree as to its meaning—a feat easily worth the full million—and the parties agreed to return to the arbitrators a second time. The parties have now litigated the final award in this Court (another six months and who knows how much in fees), and it seems likely an appeal to the Fifth Circuit is in the parties' future (probably another year, plus fees). If this is the kind of "dispute resolution" parties voluntarily subject themselves to, one cannot help but wonder how grim the perception of the judiciary must be.

219 n.11 (5th Cir. 2003) ("[W]e should defer to the judgment of the arbitrator and enforce *both* the original arbitration award *and* the arbitrator's timely interpretation of the award because it is the arbitrator's construction which was bargained for." (internal quotation marks and alteration omitted)).

Accordingly,

IT IS ORDERED that Plaintiff AP Seating USA, LLC's Motion to Vacate an Improper Arbitration Award and Confirm a Unanimous and Unambiguous Award [#16] is DENIED;

IT IS FURTHER ORDERED that Defendant Circuit of the Americas LLC's Motion to Confirm Arbitration Award [#15] is GRANTED;

IT IS FINALLY ORDERED that the October 21, 2013 arbitration award, as clarified by the arbitration panel's November 21, 2013 modification, is CONFIRMED.

SIGNED this the ___9th___ day of July 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE